IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDINEI MACHADO, SANDRA VAZ LISBOA, NAPOLEAO PEREIRA, WANOR DE CARVALHO, MARCOS MARTINS, JOSE LUIZ DA COSTA, JOAO PADHILA, CARLOS FURTADO, ADELSON SODRE, LUCIANA CANESTRARO, and all others similarly situated, <br><br> Plaintiffs <br><br> v. <br><br> COVERALL NORTH AMERICA, INC., <br><br> Defendant. | Case No. 05-11884 |

**DEFENDANT COVERALL NORTH AMERICA, INC.'S
MOTION TO STAY PROCEEDINGS PENDING ARBITRATION
AND TO EXTEND TIME TO RESPOND TO THE COMPLAINT**

Defendant, Coverall North America, Inc. ("Coverall"), by its attorneys, respectfully moves this Court: (i) pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §3, to stay all proceedings in this action pending arbitration; and (ii) pursuant to Rule 6 of the Federal Rules of Civil Procedure, to extend Coverall's time to answer, move or otherwise plead in response to plaintiffs' Amended Complaint until the Court resolves the motion to Stay Proceedings.

**PRELIMINARY STATEMENT**

This purported class action arises out of eight separate written Franchise Agreements entered into by and between Coverall, a franchisor of commercial janitorial cleaning businesses,

and the named plaintiffs.[1] Pursuant to the Franchise Agreements, Coverall offered, and plaintiffs accepted, a limited license to operate Coverall franchises in Massachusetts. Now claiming that Coverall made certain misrepresentations in connection with their execution of the Franchise Agreements and, further, that they were not properly compensated for some of the services they claim to have performed pursuant to those agreements, plaintiffs commenced this action.[2]

The merits (or lack thereof) of plaintiffs' claims aside, all of the plaintiffs except Jose Luiz da Costa agreed with Coverall, in entering into their respective Franchise Agreements (or in assuming the obligations of existing Franchise Agreements), that they would submit all disputes arising out of or relating to the Franchise Agreement, the validity of that agreement or the parties' relationship, to arbitration before the American Arbitration Association.[3] Since, as shown below, the plaintiffs' respective claims fall well within the ambit of the parties' arbitration agreements, §3 of the FAA requires that this action be stayed pending arbitration.

## RELEVANT BACKGROUND FACTS

### A.   The Parties

Coverall is a Delaware corporation with its principal place of business in Boca Raton, Florida. Coverall is engaged in the business of granting franchises to qualified persons to operate commercial janitorial cleaning businesses, and to use Coverall's trade names and marks, as well as Coverall's operating system (the "Coverall® System"), in connection therewith.

---

[1] Two of the plaintiffs, Napoleao Pereira and Adelson Sodre, executed Transfer Agreements by which they assumed the obligations of pre-existing Franchise Agreements. Those Franchise Agreements contained arbitration agreements.

[2] The latter category of claims is premised on plaintiffs' curious contention that they are not franchisees, but employees of Coverall.

[3] Eight of the named plaintiffs are already parties to arbitration proceedings that Coverall filed with the Boston office of the American Arbitration Association.

Coverall franchisees are provided with, among other things, training, equipment, billing and collection services, and a quality control program. Coverall also provides its franchisees customer accounts to clean. Under the Coverall System, Coverall enters into contracts with customers for cleaning services, and delegates the performance of the services under the contracts to its franchisees.

The named plaintiffs, current and former Coverall franchisees, purport to represent a putative class of such individuals. (Amended Complaint ("Am. Compl."), ¶1.) The named plaintiffs, like the putative class they claim to represent, are parties to written Franchise Agreements, as follows:

- Edinei Machado entered into a written Franchise Agreement with Coverall d/b/a Coverall of Boston on or about July 25, 2003.

- Sandra Vaz Lisboa entered into a written Franchise Agreement with Coverall d/b/a Coverall of Boston on or about July 24, 2002.

- Napoleao Pereira purchased an existing Coverall franchise from Cicero Leonel and is the assignee of the rights and obligations under Mr. Leonel's written Franchise Agreement with Coverall d/b/a Coverall of Boston dated January 26, 2004.

- Wanor De Carvalho entered into a written Franchise Agreement with Coverall d/b/a Coverall of Boston on or about March 24, 2004.

- Marcos Martins entered into a written Franchise Agreement with Coverall d/b/a Coverall of Boston on or about July 28, 2003.

- Jose Luiz Da Costa entered into a written Franchise Agreement with Coverall d/b/a Coverall of Boston on or about June 28, 1999.

- Joao Padhila entered into a written Franchise Agreement with Coverall d/b/a Coverall of Boston on or about May 20, 2003.

- Carlos Furtado entered into a written Franchise Agreement with Coverall d/b/a Coverall of Boston on or about December 2, 2003.

- On or about December 29, 2003, Adelson Sodre purchased an existing Coverall franchise from Cesar Santos and is the assignee of the rights and obligations under Santos' written Franchise Agreement with Coverall d/b/a Coverall of Boston dated August 27, 2002.

- Luciana Canestraro entered into a written Franchise Agreement with Coverall d/b/a Coverall of Boston on or about July 8, 2002.

(The named plaintiffs' respective franchise agreements are attached as Exhibits I-P, R and T to the Affidavit of Joseph J. Falbo ("Falbo Aff."), filed herewith.)

B. **The Parties' Arbitration Agreement**

In entering into their respective Franchise Agreements, Coverall, the named plaintiffs and the class they purport to represent explicitly agreed that they would submit all disputes arising out of or relating to their Franchise Agreements, the validity of those agreements or the parties' relationship to arbitration before the American Arbitration Association. Paragraph 21 of the Franchise Agreement thus provides, in pertinent part, as follows:

> [A]ll controversies, disputes, or claims between Coverall, its officers, directors, agents and/or employees (in their respective capacities) and Franchisee (and Franchisee's owners, officers, directors and/or any guarantors of this Agreement) arising out of or related to the relationship of the parties, this Agreement, any related agreement between the parties, and/or any specification, standard or operating procedure of Coverall, including those set forth in the Coverall Policy and Procedure Manual . . . shall be submitted promptly for arbitration.
>
> Arbitration shall be subject to the Federal Arbitration Act and, except as otherwise provided in this Agreement or agreed upon by the parties, the then current Rules of the American Arbitration Association for Commercial Arbitration.
>
> The arbitration shall take place in the Area in which the Franchisee conducts its business, and shall be administered by the office of the American Arbitration Association or as mutually agreed by the parties.

(*See* Falbo Aff., Exhibits I-L, N-P, R and T, § 21.)[4]

---

[4] Plaintiff Jose Luiz da Costa's Franchise Agreement was signed in 1999 and does not contain a binding agreement to arbitrate any and all claims like the other named plaintiffs. While that may exempt Mr. da Costa from the stay that Coverall seeks, it further exemplifies why this supposed fraud case is inappropriate for class treatment. Moreover, although not subject to a stay under the FAA, Mr. da Costa's claims are time-barred. Paragraph 22 of his Franchise Agreement provides that "[a]ny and all claims and actions arising out of or relating to this Agreement, the relationship of Franchisee and Coverall, or Franchisee's operation of its business . . . shall be commenced within two years from the

*(footnote continued to next page)*

C.   **Plaintiffs' Complaint**

Notwithstanding their agreement to arbitrate their disputes, and despite the fact that eight of the named plaintiffs were already parties to arbitration proceedings pending before the AAA,[5] on or about September 24, 2005, plaintiffs filed this action. An amended complaint was filed on November 15, 2005. Plaintiffs' Amended Complaint alleges, in substance (i) that plaintiffs are actually employees, and not franchisees of Coverall (Am. Compl. at ¶¶23-29) and entitled to the various wages and benefits to which employees are assertedly entitled, and (ii) that Coverall fraudulently induced plaintiffs and the putative class members to enter into their respective Franchise Agreements by misrepresenting the level of monthly income they would receive under their Agreements, the number of hours per week that would be required to service the accounts they would be offered, and distance they would have to travel to service those accounts. (Am. Compl. ¶¶37 - 41.) Based on these allegations, plaintiffs' Amended Complaint purports to assert claims for violation of Massachusetts Independent Contractor Law (Count I), violation of certain inapplicable Massachusetts Minimum Wage and Overtime Laws (Counts II, III and IV), violation of Massachusetts Unfair and Deceptive Business Practices Act (Count V), breach of

---

*(footnote continued from previous page)*
occurrence of the facts giving rise to such claim or action, or such claim or action shall be barred." In any event, whether Mr. da Costa's claims are subject to arbitration has no bearing on whether the claims of the other plaintiffs should be stayed pending arbitration. "[T]he preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered [requiring] rigorous enforcement of agreements to arbitrate even though [the result is] piecemeal litigation." *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 51 n. 7 (1st Cir. 1986) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

[5]   Prior to the commencement of this lawsuit, Coverall filed arbitration demands against named plaintiffs Lisboa, Pereira, De Carvalho, Martins, Padhila, Furtado, Sodre and Canestraro with the AAA in Boston. Coverall also filed in this Court (prior to the commencement of this lawsuit) eight Petitions to compel arbitration as to named plaintiffs Lisboa, Pereira, De Carvalho, Martins, Padhila, Furtado, Sodre and Canestraro. (*See* Civil Actions Nos. 05-11867 through -11874).

contract (Count VI), rescission (Count VII), misrepresentation, (Count VIII), quantum meruit (Count IX) and unjust enrichment (Count X).

## ARGUMENT

### The Claims Are Subject To Binding Arbitration

I.  **The FAA Mandates That All Arbitrable Claims Be Submitted To Arbitration**

The principles underlying the policies favoring arbitration agreements are well-established in this Circuit. Where, as here, "there is an agreement to arbitrate, the FAA reflects a strong, well-established, and widely recognized federal policy in favor of arbitration." *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 29 F.3d 727, 730 (1st Cir.), *aff'd*, 515 U.S. 528 (1995); *accord KKW Enterprises, Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 49 (1st Cir. 1999); *Painewebber Inc. v. Elahi*, 87 F.3d 589, 593 (1st Cir. 1996) ("[T]he FAA '"is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."') (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983)). Indeed, "[t]he 'primary purpose' of the FAA is to ensure 'that private agreements to arbitrate are enforced according to their terms.'" *Elahi*, 87 F.3d at 593 (quoting *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479, 109 S. Ct. 1248, 1256 (1989)); *accord Cone Memorial Hosp.*, 460 U.S. at 24, 103 S. Ct. at 941 (the FAA expresses Congress' intent "to mandate enforcement of all covered arbitration agreements").[6]

---

[6] The arbitration agreements at issue in this case clearly fall within the scope of the FAA. The FAA applies whenever there is an agreement to arbitrate contained in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2; *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74, 115 S. Ct. 834, 841 (1995). The term "commerce" is to be broadly construed. *Prima Paint Corp. v. Flood & Conklin Mfg. Corp.*, 388 U.S. 395, 401-02, 87 S. Ct. 1801 (1967). In

*(footnote continued to next page)*

One of the primary vehicles for the enforcement of arbitration agreements is Section 3 of the FAA. That section provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties, stay the trial of the action until such arbitration has been had in accordance with the terms of the Agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. §3. In other words, absent proof that the party seeking to invoke arbitration is "in default in proceeding with . . . arbitration" – which is not at issue here – a party is entitled to a stay under Section 3 if the court is satisfied that the issue in the pending action "is referable to arbitration under [the parties' agreement]." *See also KKW Enterprises, Inc.*, 184 F.3d at 50 (Under Section 3 of the FAA, if a suit is brought "on an issue referable to arbitration under a written arbitration agreement, the court shall stay a matter until the arbitration "has been had in accordance with the Agreement.").

---

*(footnote continued from previous page)*
fact, the Supreme Court has held that the FAA extends to the full reach of the Commerce Clause. *See Allied-Bruce*, 513 U.S. at 273-74, 115 S. Ct. at 841. As noted above, each Franchise Agreement was entered into between plaintiffs, Massachusetts residents, and Coverall, a Delaware corporation with its principal place of business in Florida. Since each Franchise Agreement calls for a continuous stream of products and funds to be exchanged between these diverse parties, the agreements plainly evidence "commerce" among the several states for purposes of the FAA. *See KKW Enterprises, Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 49 (1st Cir. 1999) (franchise agreements between Massachusetts franchisee and Illinois franchisor "implicate interstate commerce, thus subjecting them to the reach of the FAA"); *Ommani v. Doctors Assoc., Inc.*, 789 F.2d 298, 299 (5th Cir. 1986) (fraud claims between Connecticut franchisor and Texas franchisee evidence commerce within the meaning of the FAA); *Creson v. Quickprint of America, Inc.*, 558 F. Supp. 984, 986 (D. Mo. 1983). Furthermore, Coverall and plaintiffs agreed, in § 21 of the Franchise Agreement, that "[a]rbitration shall be subject to the Federal Arbitration Act."

II.   **The Arbitration Clause Encompasses The Plaintiffs' Claims**

Here, the issues raised in plaintiffs' Amended Complaint are clearly referable to arbitration under the parties' written agreements. "[W]hether an issue is to be decided by [an] arbitrator is a matter of the parties' contractual intent." *Elahi*, 87 F.3d at 593. However, "[t]he court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 3353 (1985) (quoting *Cone Memorial Hosp.*, 460 U.S. at 24, 103 S. Ct. at 941). That body of law "'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62, 115 S. Ct. 1212, 1218 n.8 (1995) (quoting *Cone Memorial Hosp.*, 460 U.S. at 24-25, 103 S. Ct. at 941). In fact, as the Supreme Court repeatedly has made clear, doubts regarding arbitrability should be resolved in favor of arbitration "unless it can be said with **positive assurance** that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *AT&T Technologies v. Communication Workers*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419 (1986) (emphasis added); *accord Mitsubishi*, 473 U.S. at 626, 105 S. Ct. at 3354 ("as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability"); *Cone Memorial Hosp.*, 460 U.S. at 24, 103 S. Ct. at 941 ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"); *Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co.*, 774 F.2d 524, 528 (1st Cir. 1985).

This mandate applies with even greater force where, as in this case, the arbitration clause is broad. *See Cleveland Wrecking Co. v. Iron Workers Local Union 40*, 947 F. Supp. 745, 748 (S.D.N.Y. 1996) (characterizing a clause which dictated submission to arbitration of "[a]ny claim or controversy arising out of or relating to th[e] agreement" as the "paradigm of a broad clause"), *aff'd*, 136 F.3d 884 (2nd Cir. 1997); *AT & T Technologies*, 475 U.S. at 650, 106 S. Ct. at 1419. "If the arbitration clause is broad, the Court 'must find that the parties bargained to have any dispute that arguably falls within the scope of that clause settled through arbitration absent compelling proof to the contrary.'" *Cleveland Wrecking Co.*, 947 F. Supp. at 748 (quoting *Ottley v. Sheepshead Nursing Home*, 688 F.2d 883, 886 (2nd Cir. 1982)); *accord United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 585, 80 S. Ct. 1347, 1354 (1960) (only the "most forceful evidence" is sufficient to prevent a dispute from being submitted to arbitration).

Applying these standards, there can be no doubt that plaintiffs' claims fall within the scope of the broad arbitration clause in their respective Franchise Agreements and, accordingly, that Coverall is entitled to a stay of this action pending arbitration. The Franchise Agreements contain the mostly broadly worded arbitration clause, requiring the submission to arbitration of "all controversies, disputes or claims between Coverall . . . and Franchisee [plaintiffs] . . . arising out of or related to the relationship of the parties, this Agreement, any related agreement between the parties, and/or any specification, standard or operating procedure of Coverall . . . ." Each of plaintiffs' claims – which concern the characterization of the relationship between the parties and seek damages for Coverall's purported fraud upon plaintiffs, compensation for services allegedly provided pursuant to the Franchise Agreement, and rescission of those agreements – plainly arise out of and relate to the parties' relationships, the Franchise Agreements or the validity those

agreements. *See Prima Paint Corp.*, 388 U.S. at 406, 87 S. Ct. at 1807 (language requiring arbitration of "[a]ny controversy or claim arising out of or relating to th[e] Agreement, or the breach thereof" was "easily broad enough to encompass" plaintiffs' claims for fraudulent inducement and rescission). They are, as a result, arbitrable.

### III.    Coverall Is Entitled To A Stay Of This Action Under Section 3 Of The FAA

As demonstrated above, all of the issues raised in the plaintiffs' Amended Complaint are referable to arbitration. Coverall is, as a result, entitled to a stay of this action pending arbitration. *See* 9 U.S.C. § 3; *Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 142 (7th Cir. 1978) (court must grant motion to stay when issue is referable to arbitration and party applying for stay is not in default); *Lippus v. Dahlgren Mfg. Co.*, 644 F. Supp. 1473, 1478 (E.D.N.Y. 1986).

### Coverall's Time To Respond To The Amended Complaint Should Be Extended Until The Court Addresses Coverall's Motion To Stay Proceedings

If this Court grants Coverall's motion to stay proceedings pending arbitration, this matter will continue to proceed in arbitration. Accordingly, the Court's ruling may obviate the need for Coverall to file an answer or, more likely, a motion to dismiss. For that reason, and to avoid the possible waste of this Court's and the parties' resources, Coverall respectfully requests, pursuant to Rule 6(b) of the Federal Rules of Civil Procedure, that the Court extend Coverall's time to answer, move or otherwise plead in response to the Amended Complaint until the Court has had an opportunity to address Coverall's motion to stay proceedings pending arbitration.

### CONCLUSION

For the foregoing reasons, Coverall's motion (i) pursuant to Section 3 of the Federal Arbitration Act, to stay this action pending arbitration, and (ii) pursuant to Rule 6 of the Federal

Rules of Civil Procedure to extend Coverall's time to respond to plaintiffs' Amended Complaint, should be granted.

COVERALL NORTH AMERICA, INC.,

By its attorneys,

/s/ Michael D. Vhay
Michael D. Vhay (BBO No. 566444)
Traci S. Feit (BBO No. 660688)
DLA PIPER RUDNICK GRAY CARY US LLP
One International Place, 21st Floor
Boston, MA 02110-2600
(617) 406-6000

*Of counsel*:

Norman M. Leon
DLA PIPER RUDNICK GRAY CARY US LLP
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
(312) 368-4000


Dated: December 16, 2005